Upon review of the competent evidence of record with respect to the errors assigned, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as facts and concludes as matters of law the following, which were admitted into evidence at the evidentiary hearing before the Deputy Commissioner, by stipulation and in a Pre-Trial Agreement executed between the parties on 13 October 1997, as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 27 August 1996, the employee-employer relationship existed between plaintiff and defendant, with defendant being self-insured with Sedgwick James of the Carolinas as the servicing agent.
3. Plaintiff's average weekly wage on 27 August 1996 was calculated pursuant to I.C. Form 22 and is $817.81, resulting in a maximum compensation rate for 1996 of $492.00.
4. The period of temporary total disability claimed by plaintiff is from 27 January 1997 to 10 March 1997.
5. During the period of time for which plaintiff claims temporary total disability, he received $500 bi-weekly in short term disability benefits pursuant to an employer funded disability plan.
***********
Based upon the competent, credible evidence of the record, the Full Commission rejects the findings of fact found by the Deputy Commissioner and enters the following:
 FINDINGS OF FACT
1. On 27 August 1996, plaintiff was 37 years of age. He was employed as a sheeter machine operator for defendant. The sheeter machine was fully automated.
2. On 27 August 1996, plaintiff had just cleared a paper jam on the sheeter machine and was proceeding to the other side of the machine. He contends that when he pivoted in a counterclockwise motion to pass by his machine, a cylinder arm struck his right shoulder. The evidence establishes that only ? to, of an inch of the cylinder arm could have come into contact with plaintiff's shoulder.
3. Plaintiff alleged that he developed pain in his right upper extremity, shoulder and right upper back muscles, and numbness and tingling in the hand and fingers of his right upper extremity as a result of being struck by the cylinder arm. Dr. Al Osbahr treated plaintiff conservatively with medication, physical therapy, and limited work duties.
4. Thereafter, plaintiff's symptoms continued to worsen, and Dr. Osbahr referred plaintiff to Dr. Charles DePaolo, an orthopedic surgeon, who began to treat plaintiff on 5 December 1997. Dr. DePaolo diagnosed plaintiff with a frozen right shoulder.
5. On 27 January 1997, plaintiff underwent arthroscopic surgery and manipulation of the right shoulder by Dr. DePaolo. At the time of the surgery, it was noted that plaintiff had a partial labral tear, supraspinitis syndrome, and adhesions in the right shoulder. Dr. DePaolo testified that the labral tear was not normally caused by the type of motion or trauma described by plaintiff as the cause of his injury.
6. During plaintiff's treatment with Dr. DePaolo, he continued treatment with Dr. Osbahr. Early in 1997, plaintiff presented to Dr. Osbahr with pain in his left shoulder, similar to that which he experienced in his right shoulder. Dr. Osbahr raised questions regarding the etiology of plaintiff's bilateral complaints and eventually visited defendant's mill to view the sheeter machine. After viewing the machine and letting the cylinder in question hit his open hand, Dr. Osbahr concluded that the size of the cylinder and the speed at which it traveled would not result in plaintiff's injuries. Dr. Osbahr testified that he believed plaintiff's shoulder conditions were the result of other trauma.
7. In addition to his employment with defendant, plaintiff owned and operated a horse farm and was involved in buying, selling, training, and showing horses. At the time of the hearing before the Deputy Commissioner, the farm housed thirteen horses, but at various times it had more animals. In training and breaking horses, plaintiff was required at times to control the animals by a lead or halter which caused the horse to jerk or lunge, causing a pulling strain on plaintiff's arms and shoulders.
8. When plaintiff's horse training activities were described to Dr. Osbahr at deposition, he opined that such activities could result in the kind of injuries experienced by plaintiff.
9. After viewing a videotape of the sheeter machine, Dr. DePaolo stated that it was not likely that being hit by the cylinder resulted in the degree of adhesions that were present, or caused a labral tear. However, when apprised of plaintiff's horse training activities, Dr. DePaolo testified that such activities were likely to have resulted in the conditions evident in plaintiff's shoulders.
10. The substantially greater weight of the evidence is that plaintiff's shoulder conditions resulted solely from his horse training activities.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's shoulder injuries were not the result of an injury by accident in the course and scope of his employment with defendant. G.S. 97-2(6).
2. Plaintiff is not entitled to compensation under the Act. G.S. 97-1 et seq.
***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. The parties shall divide the costs.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER